UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FRED ESSER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-11-0962** |
| | § | |
| **WILLIAM T. FRETWELL, et al.** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss, or, in the Alternative, Transfer Case to the Eastern District of North Carolina ("Motion") (Doc. No. 11). For the reasons stated below, the Court is of the opinion that the Motion should be granted.

**I.     BACKGROUND**

Plaintiff Fred Esser filed suit against Defendants William T. Fretwell and Morris L. Freeman in this Court on March 16, 2011.  The following allegations are taken from Plaintiff's Complaint (Doc. No. 1) and accepted as true for purposes of the pending motion.

Plaintiff and Defendants began a casket business in early 2008 after purchasing the accounts and assets of Plaintiff's pre-existing casket business.  (Compl. ¶ 6.)  Each party owned one-third of the company.  (*Id.*)  Additionally, the parties executed a termed employment contract with Plaintiff in return for his services selling caskets and managing the day-to-day operations of the company from its offices in Houston, Texas.  (*Id.* ¶ 7.) Defendants managed the corporate affairs of the company without much involvement from Plaintiff.  (*Id.*)

1

In July 2010, Defendant Fretwell traveled to Houston to serve a buyout agreement[1] on Plaintiff, and informed him that he had five days to sign it.  (*Id.* ¶ 8.)  The buyout provided Plaintiff with a lump sum for the remaining years in his employment contract, 18 months of health insurance for Plaintiff and his wife after the buyout, a vehicle, and $10 for his one-third ownership interest in the Company.  (*Id.*)

Three months after this buyout, Matthews International Corporation announced the acquisition of the company as part of a larger transaction.  (*Id.* ¶ 11.)  The acquisition included a purchase price of $22.8 million, plus additional consideration of up to $6.0 million contingent on operating performance over the next three years.  (*Id.*)  Defendants did not inform Plaintiff of the impending sale or offer him any share of the proceeds of this sale at the time of the buyout agreement.  (*Id.*)  Plaintiff asserts that Defendants fraudulently coerced him into signing away his rightful share of the proceeds, and thus brings claims for (1) breach of fiduciary duty, (2) fraud and fraud by nondisclosure, (3) conversion, (4) usurping a corporate opportunity.  (*Id.* ¶¶ 13–22.)  Plaintiff additionally seeks a declaration of his rights and status, including his one-third ownership interest and right to a third of the proceeds from the sale.  (*Id.* ¶¶ 23–25.)

Defendants have moved to dismiss, or, in the alternative, transfer this case to the Eastern District of North Carolina.  Defendant Freeman asserts that this Court does not have personal jurisdiction over him.  Defendants also assert that the claims should be dismissed based on forum selection clauses of the Separation Agreement and the IC

---

[1] Although Plaintiff did not describe the structure of the buyout agreement in the Complaint, Defendants have attached a copy of the agreement to their Motion under Tab 1, Exhibit C.  The agreement between the parties is contained in a contract titled "Separation from Service and Redemption Agreement" (the "Separation Agreement").  The Separation Agreement contains two attachments: the "Assignment of Limited Liability Company Interest" (the "Assignment"), attached as Exhibit A, and the Independent Contractor Agreement (the "IC Agreement"), attached as Exhibit B.

Agreement.  Alternatively, Defendants move to transfer the case to the Eastern District of North Carolina.  The motion is briefed and ripe for disposition.

## II.    MOTION TO DISMISS UNDER 12(B)(1) and 12(B)(3)

Defendants contend that the Complaint must be dismissed as it was filed in the improper forum under the forum selection clause.  Because the Court believes the Complaint should be dismissed on these grounds, it need not consider Defendants' arguments asserting lack of personal jurisdiction nor their alternative motion to transfer this case to the Eastern District of North Carolina.

### A.    Legal Standard

The United States Code instructs a district court to dismiss or transfer a case if venue is improper where filed. 28 U.S.C. § 1406(a).  A party may move for dismissal of a suit based on a forum selection clause under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3).  *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233 (5th Cir. 2009) ("This court . . . has declined to address the enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under Fed. R. Civ. P. 12(b)(1) or 12(b)(3).") (citations and internal quotation marks omitted).  For a motion to dismiss under Rule 12(b)(1), the party asserting jurisdiction bears the burden of proof. *Life Partners Inc. v. U.S.*, 650 F.3d 1026 (5th Cir. 2011).  However, district courts in this circuit are divided over which party bears the burden of proof with regard to venue after a Rule 12(b)(3) motion has been made.[2]  The issue need not be addressed in this case,

---

[2] *Compare Texas Marine & Brokerage, Inc. v. Euton,* 120 F.Supp.2d 611 (E.D. Tex. 2000), *Sanders v. Seal Fleet, Inc.,* 998 F.Supp. 729 (E.D. Tex. 1998), and *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.,* 923 F.Supp. 950 (S.D. Tex. 1996) (all holding that a defendant moving to dismiss under Rule 12(b)(3) bears the burden of showing improper venue) *with MaxEn Capital, LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at *3 (S.D. Tex. April 3, 2009); *Norsworthy v. Mystik Transp., Inc.,* 430

however, because it is clear under either analysis that Defendants have met their burden and that the motion to dismiss should be granted.

On a motion to dismiss for improper venue based on a forum selection clause, a court must accept as true all allegations in the complaint and resolve all factual conflicts in favor of the non-movant. *Ambraco*, 570 F.3d at 237; *Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007).  A court may also consider evidence in the record beyond those facts alleged in the complaint.  *Ambraco*, 570 F.3d at 238.  Even when jurisdiction is based on diversity, federal law applies to the determination of whether a forum selection clause is enforceable.  *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008).

**B.    Analysis**

**1. Mandatory Nature of the Forum Selection Clause**

Courts must enforce a forum selection clause if its language is exclusive and mandatory.  **"**For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive."   *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504, 376 F.3d 501 (5th Cir. 2004); *see also Sutherland*, 2009 WL 936895, at *3; *Von Graffenreid v. Craig,* 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) ("Where the agreement contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory.")

The Court finds that the language contained in the forum selection clauses of the Separation Agreement and IC Agreement provide a mandatory forum selection.  The

---

F.Supp.2d 631 (E.D. Tex. 2006), *Langton v. Cbeyond Commc'n, L.L.C.,* 282 F.Supp.2d 504 (E.D. Tex. 2003) (holding that the plaintiff bears the burden once a defendant raises the issue of improper venue).

clauses state that "[a]ny action relating to this Agreement *shall* be instituted and prosecuted *only* in the courts of the County of Hertford, State of North Carolina, or the federal district courts for the Eastern District of North Carolina." (Separation Agreement ¶ 11; IC Agreement ¶ 11 (emphasis added).) Many courts, including the Fifth Circuit, have found similar language to provide a mandatory forum. *See Kevlin Servs., Inc. v. Lexington State Bank,* 46 F.3d 13, 14 (5th Cir. 1995) (finding that the contract contained "no ambiguity" as to the choice of forum where it stated that "[t]he legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas"); *see also Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006) (finding that jurisdiction was exclusive where the forum selection clause used "strongly worded[,]. . . mandatory language" such as "shall be proper only"); *cf. K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 501 (10th Cir. 2002) (finding the forum selection clause permissive because it did not include terms such as "exclusive," "sole," or "only"). Additionally, Plaintiff's Response does not argue that the forum selection clause is permissive rather than mandatory.

## 2. Scope of the Forum Selection Clause

Plaintiff's sole argument with respect to the forum selection clause is that his tort claims do not arise under either the Separation Agreement or the IC Agreement, which each contain a forum selection clause. Instead, he asserts that his claims are most closely related to the Assignment (referred to as the "Buyout Agreement" in Plaintiff's Response), which does not contain a forum selection clause. (Resp. ¶ 25.)

The scope of a forum selection clause is not limited to breach of contract claims, and can include claims sounding in tort. *Carnival Cruise Lines v. Shute*, 449 U.S. 585,

588 (1991) (finding that a forum selection clause covered the plaintiffs' allegations of negligence) *Ginter ex rel. Ballard v. Benlcher, Predergast & LaPorte*, 536 F.3d 439, 444–45 (5th Cir. 2008); *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 222 n.27 (5th Cir. 1998).  The Fifth Circuit, in rejecting the contract/tort distinction for forum selection clauses, noted that "any contrary conclusion would allow a forum selection clause to be defeated by 'artful pleading.'"

In order to determine the scope of a forum selection clause, a court must "examine[] the language of the forum-selection clause with a common-sense view of the causes of action to determine wither the clause was broad enough to cover the torts." *Ginter ex rel Ballard*, 536 F.3d at 444–45 (citing *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d at 222).   The relevant clauses in the present case cover "[a]ny action *relating to* [the Separation] Agreement" and "[a]ny action, claim, dispute or proceeding *arising from or relating to* [the IC] Agreement."   (Separation Agreement ¶ 11; IC Agreement ¶ 11 (emphasis added).)  Courts have construed similar clauses broadly, and have held that these agreements can cover claims arising out of tort that arise out of the contractual relationship.  *See, e.g.*, *Ginter ex rel. Ballard v. Benlcher, Predergast & LaPorte*, 536 F.3d 439, 444–45 (5th Cir. 2008) (a forum selection clause in an attorney-client contract specifying that disputes "for the enforcement and/or breach of this contract" must be filed in Louisiana state court applied in the clients' malpractice suit against the attorney); *Norris v. Commercial Credit Counseling Services, Inc.*, No. 4:09-cv-206, 2010 WL 1379732, at *5 (E.D. Tex. Mar. 31, 2010) (finding that a forum selection clause governing "any disputes arising under or in connection with this Agreement" should include the plaintiffs' tort claims); *Sutherland*, 2009 WL 936895, at

6

*6 (finding that the clause at issue "is broad, covering claims 'related to' the Agreement," including claims for breach of a separate oral agreement, fraud, tortious interference with an agreement, conspiracy, and negligence).

Plaintiff argues that, even if forum selection clauses can include tortuous acts, the torts alleged in Plaintiff's Complaint relate most closely to the Assignment, which has no forum selection clause. However, the Assignment is an ancillary document executed pursuant to the Separation Agreement and attached as Exhibit A. The Separation Agreement requires Plaintiff to execute the Assignment and recites the central terms of that assignment. (Separation Agreement ¶ 5.) Furthermore, the Separation Agreement states that "[t]his Agreement and the Exhibits attached hereto contain the entire agreement and understanding between the Parties with regard to the subject matters of this Agreement and such Exhibits." (*Id.* ¶ 12.) The Assignment contains no such guarantee, and is clearly meant as an attachment to the larger agreement.

Although Plaintiff's Response refers to the Assignment as the "Buyout Agreement," he referred to the entire transaction and resulting contract as the "buyout" and "buyout agreement" in his Complaint. (Compl. at ¶ 8 ("Fretwell . . . serve[d] a buyout agreement on Esser . . . . The buyout provided Esser a lump sum for the remaining years in his employment contract, 18 months of health insurance for Esser and his wife after the buyout, a vehicle, and $10 for his one-third ownership interest in the Company.").) The Complaint further states that he sold his ownership interest in the company because he "needed the money and more importantly the 18 months of health insurance offered in the buyout." (*Id.* ¶ 10.) The Assignment itself only gave Plaintiff $10.00; the additional $185,000 payout and the health insurance provisions were

7

contained in the Separation Agreement, not the Assignment.  Therefore, the Court finds

that Plaintiff's claims "relat[e] to" the Separation Agreement, and thus are subject to the

forum selection clause.  (Separation Agreement ¶ 11.)

### 3. Enforceability of the Forum Selection Clause

Forum selection clauses are "prima facie valid, and should be enforced unless

enforcement is shown by the resisting party to be 'unreasonable' under the

circumstances."  *Int'l Software Sys., Inc. v. Amplicon,* 77 F.3d 112, 114 (5th Cir.

1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972)). The Fifth

Circuit has noted:

> Unreasonableness potentially exists where (1) the incorporation of the
> forum selection clause into the agreement was the product of fraud or
> overreaching; (2) the party seeking to escape enforcement "will for all
> practical purposes be deprived of his day in court" because of the grave
> inconvenience or unfairness of the selected forum; (3) the fundamental
> unfairness of the chosen law will deprive the plaintiff of a remedy; or (4)
> enforcement of the forum selection clause would contravene a strong
> public policy of the forum state.

*Haynsworth v. The Corporation,* 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival*

*Cruise Lines,* 499 U.S. at 595; *M/S Breman*, 407 U.S. at 12–13, 15, 18).

However, the party resisting enforcement bears a "heavy burden of proof."

Plaintiff has not offered any reasons why this forum selection clause is unreasonable.  In

the portion of his brief arguing that transfer of venue is improper, Plaintiff states reasons

why venue is appropriate in Texas; however, none of these reasons presents barriers

severe enough to prevent Plaintiff from having his day in court.  Additionally, while

Plaintiff's Complaint contains a claim of fraud against Defendants, he does not allege that

the forum clause itself was incorporated into the agreement by fraud.  *See Afram*

*Carriers, Inc. v. Moeykens,* 145 F.3d 298, 302 & n.3 (5th Cir. 1998) (noting that a party

must show that the forum selection clause itself, and not the entire agreement, was obtained by fraud).

**VI.   CONCLUSION**

For the reasons stated above, this Court holds that Defendants' Motion to Dismiss, or, in the Alternative, Transfer Case to the Eastern District of North Carolina (Doc. No. 11) is **GRANTED.**  Plaintiff's claims are dismissed without prejudice so that Plaintiff may refile his claims in the proper forum if he so chooses.


**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 28th day of October, 2011.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE
.